IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BLUE RIBBON INDUSTRIES, INC.,** : | | |
| Plaintiff, : | | |
| v. : | | CASE NO. 08-CV-3867 |
| : | | |
| **BOWE TEXTILE CLEANING USA,** : | | |
| et al., : | | |
| Defendants. : | | |

MEMORANDUM & ORDER

**RUFE, J.** June 26, 2009

Asserting diversity jurisdiction, Plaintiff Blue Ribbon Industries, Inc. ("Blue Ribbon" or "Plaintiff"), filed a civil action Complaint in this Court against Defendants Bowe Textile Cleaning, USA ("Bowe") and Sail Star USA, Inc. ("Sail Star") (collectively, "Bowe").[1] The Complaint lists seven state law counts against the defendants. Presently before the Court is Sail Star's revised Motion to Dismiss Plaintiff's Complaint on the ground of claim preclusion, as well as all briefing thereon.[2] For the reasons that follow, the Motion will be denied.

## I.  BACKGROUND

*A.  Factual Background*

**1.  The Parties' Relationship**

---

[1] Doc. No. 1. While Plaintiff names Sail Star and Bowe as separate party defendants, from the Motion to Dismiss [Doc. No. 15] it appears that the named defendants are actually a single entity, with Bowe functioning as a division of the Sail Star company, and Sail Star doing business as "Bowe." The present record does not allow the Court to fully understand the relationship between Bowe and Sail Star at all times relevant to this litigation, as, for example, it appears that Sail Star's present relationship with Bowe may have taken shape sometime after Blue Ribbon began selling Bowe equipment. For this reason and for ease of reference, within this Memorandum the defendant(s) will be referred to simply as "Bowe."

[2] The revised Motion superseded the Motion to Dismiss originally filed by Sail Star in December, 2008. Doc. No. 11.

1

Plaintiff Blue Ribbon is a corporation that sells and distributes dry cleaning and laundry equipment.[3]  Defendant Bowe is a division of Defendant Sail Star engaged in the business of manufacturing and distributing dry cleaning and laundry equipment worldwide.  The Bowe "Permac" line of dry cleaning and laundry equipment is considered in the field to be of very high quality.

In 1993, Plaintiff Blue Ribbon became a dealer and distributor for Bowe equipment in the territory of south and central New Jersey.  In this capacity, Blue Ribbon marketed, sold, and distributed Bowe laundry and dry cleaning equipment, and installed and serviced it for customers.  Plaintiff was not the exclusive dealer or distributor in this territory, but it nonetheless soon became the top distributor of Bowe Permac equipment in the eastern United States.

Blue Ribbon sought an exclusive machines and equipment distributorship from Bowe for several years.  After extensive negotiations, on February 1, 2001 it entered into an agreement to be the exclusive dealer and distributor of Bowe machines and equipment for the territory of Delaware, eastern Pennsylvania and southern New Jersey ("Territory").  Blue Ribbon's exclusive distributorship of Bowe machines and equipment was successful for a period of some years.

In February, 2003, after further negotiations, Blue Ribbon and Bowe entered into an agreement for Blue Ribbon also to be the exclusive dealer and distributor for Bowe parts in

---

[3] Compl. ¶¶ 1, 8.  The facts in this Memorandum are drawn from the Complaint unless otherwise noted.

Pennsylvania, southern and central New Jersey and Delaware.[4]  As such, from February, 2003, onward, Blue Ribbon was the exclusive distributor and dealer of Bowe machines, parts and equipment in the Territory.

**2.  Defendants' Alleged Wrongdoing**

Blue Ribbon alleges various factual bases for its claims against the defendants.  First, in 2004, Bowe introduced a new line of dry cleaning machines known as "Generation 6."  Sometime thereafter, Bowe ascertained that the Generation 6 machines had defective back plates that could cause them to leak a hazardous chemical, Perchloroethylene, or to be inoperable.  The Generation 6 machines had other problems as well, relating to excessive internal condensation and high moisture content and faulty containment trays.  Bowe knew of these defects yet instructed Blue Ribbon to continue selling and servicing the Generation 6 machines while the company worked to resolve the problems through certain re-design efforts.  Although the problems identified with Generation 6 machines persist to the present day, Bowe has not implemented a re-design or other solution, and consequently Blue Ribbon has been required to service customers' chronic problems with the machines for several years, at significant financial and reputational cost to its business.

Second, in the latter half of 2005, Jack O'Mara, a Blue Ribbon parts employee, and Brian O'Mara, a Blue Ribbon technician and Jack O'Mara's brother, resigned from the company.  Within one month of their resignations, Blue Ribbon's parts sales and distribution

---

[4] From the Complaint, it appears that the equipment distribution Territory was different than the geographic area covered by the exclusive parts distribution agreement the parties subsequently entered into, in that the parts agreement included all of Pennsylvania, as well as central and southern New Jersey, while the equipment agreement Territory included only eastern Pennsylvania and southern New Jersey (both territories included Delaware).

3

business declined sharply, before "completely disappear[ing]."[5] Blue Ribbon repeatedly asked Bowe whether it was violating the parties' exclusive parts distribution agreement by selling parts directly or distributing parts through distributors other than Blue Ribbon in the Territory, but Bowe denied that it was doing so. In mid-2006, however, Bowe admitted to Blue Ribbon that it was selling parts in the Territory, both directly to customers and to other distributors, including the O'Mara brothers, who had begun a competing business. Bowe offered Blue Ribbon certain payment on the parts thus sold in violation of the parties' exclusive distribution agreement, but did not cease selling parts to customers or other dealers in the Territory. Since then, Blue Ribbon's parts distribution business has altogether failed.

Third, Bowe sold an add-on feature for its Generation 6 machines and certain other models known as the "Slimsorba." The Slimsorba feature has an environmental protection function, absorbing and so reclaiming solvent in the air, the machine or the clothes cleaned therein. Prior to 2007, none of the states in Blue Ribbon's overall distribution area legally required the use of the Slimsorba feature or similar vapor barriers on dry cleaning equipment. However, it was anticipated in the dry-cleaning industry that such legal requirements soon would be imposed. In 2007, the New Jersey Department of Environmental Protection issued a plan to require vapor barriers on dry cleaning equipment by 2010 ("the NJDEP Plan"), and the Slimsorba feature was the retro-fit part that would allow Bowe machines to comply with this prospective rule.

Until 2007, Defendants consistently represented to Blue Ribbon that Blue Ribbon could obtain Slimsorba units from Bowe for approximately $5,000.00 per unit, and that

---

[5] Compl. ¶ 31.

Slimsorba units would "always be available for after market add-on" to Blue Ribbon customers who purchased Bowe machines.[6]  Blue Ribbon, in turn, represented to its customers that they could purchase Slimsorba units at any time after purchase for approximately $5,000.00.  After the NJDEP Plan issued in 2007, many customers contacted Blue Ribbon seeking to buy Slimsorba units.  When Blue Ribbon contacted Bowe in an effort to purchase the requested units, Bowe first reported that Slimsorba add-ons were no longer available, and then, after several demands by Blue Ribbon, that Slimsorba units could be purchased at a cost of $14,000.00 per unit.

Finally, Blue Ribbon alleges that Bowe has sold at least one machine as new when in fact it was used and refurbished, and that Bowe misrepresents that its machines are made in Germany when in fact they are made in China.

B.  Procedural Background

**1.  The Instant Action**

Based on the foregoing allegations, Blue Ribbon filed the instant action against Bowe and Sail Star, bringing claims under Pennsylvania law for Breach of Contract (Count One), Breach of Covenant of Good Faith and Fair Dealing (Count Two), Tortious Interference with Business Relations and Contracts (Count Three), Breach of Warranty (Count Four), Negligence (Count Five), Negligent Misrepresentation (Count Six) and Fraud (Count Seven), in August, 2008.  Defendant Sail Star responded by filing a Motion to Dismiss, followed by the instant revised Motion to Dismiss, in which it argues that this case should be barred on the basis of claim preclusion because it involves claims that should have been brought as compulsory

---

[6] Compl. ¶¶ 27, 28.

counterclaims in a debt collection action Bowe previously initiated against Blue Ribbon in North Carolina state court, and in which default judgment was entered against Blue Ribbon in early 2009 ("the North Carolina Action").

**2.  The North Carolina Action**

In particular, on November 17, 2007, Bowe commenced an action against Blue Ribbon in the Superior Court for Mecklenberg County, North Carolina, to collect a debt Blue Ribbon allegedly owed Bowe under an "open account agreement."[7]  The open account agreement, entered into by Blue Ribbon and Bowe on August 19, 2002, provided that Bowe would sell Blue Ribbon dry cleaning equipment and Blue Ribbon would pay Bowe in return.[8]  In the North Carolina Action, Bowe sought to collect a due balance of over $70,000.00 on the open account agreement, plus interest and attorney's fees of over $30,000.00.  It brought two counts against Blue Ribbon, one for Breach of Contract and another styled "Claim on an Open Account," with each count supported by identical allegations.

After Blue Ribbon did not timely respond to the Summons and Complaint, default was entered against it on January 8, 2008.  It appears that on September 17, 2008, Blue Ribbon filed a motion to dismiss the North Carolina Action for lack of personal jurisdiction, and that sometime thereafter it filed a motion to set aside the entry of default.  The North Carolina court denied Blue Ribbon's motion to set aside default and struck its motion to dismiss by Order of

---

[7] Mot. Dism. ¶¶ 4, 5; Ex. D at *3, ¶ 9 ( February 16, 2009 "Findings of Fact and Conclusions of Law," in the case of <u>Sail Star U.S.A., Inc., d/b/a Bowe Textile Cleaning, U.S.A. v. Blue Ribbon Industries, Inc.</u>, Civil Action No. 07-CVS-22417, North Carolina Superior Court, Mecklenberg County (Johnston, J.)).

[8] Mot. Dism. Ex. D at *3, ¶ 9.

December 10, 2008.[9]  Upon motion of Bowe, the court granted default judgment, found as true the allegations in Bowe's complaint, and assessed damages against Blue Ribbon on February 16, 2009.[10]

## II.  DISCUSSION

*A.  Legal Standard*

Bowe moves for the dismissal of Blue Ribbon's Complaint for failure to state a claim upon which relief can be granted, invoking Rule 12(b)(6) of the Federal Rules of Civil Procedure.  When considering a motion to dismiss under Rule 12(b)(6), a court accepts as true all factual allegations in the complaint, draws all reasonable inferences therefrom and construes them in the light most favorable to the plaintiff.[11]  The United States Supreme Court has recently clarified this standard, explaining that "[a] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[12]  Rather, a plaintiff must allege facts that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[13]  A court should not grant a 12(b)(6) motion if, "under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[14]  The

---

[9] Id. at *1 ("Order on Defendant's Mot. to Set Aside Entry of Default and Pl.'s Mot. to Strike").

[10] By its ruling herein, made without prejudice, the Court does not foreclose the possibility that through discovery and the further elaboration of the parties' positions, the North Carolina Action may be shown to appropriately factor into the outcome of this matter.

[11] See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).

[12] Bell Atl. Corp. v. Twombly, -- U.S. --, 127 S. Ct. 1955, 1965 (2007) (citation omitted).

[13] Id.

[14] Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002).

parties do not dispute that claim preclusion may serve as the basis for a Rule 12(b)(6) dismissal, and that a court reviewing a motion based on this ground may consider "undisputed court records from the action allegedly having" a claim preclusive effect.[15]

### B. Application

Pursuant to 28 U.S.C. § 1738, "federal courts must give a state court judgment the same preclusive effect as would the courts of that state."[16] The asserted ground for Bowe's Motion to Dismiss is that Blue Ribbon's claims are precluded under North Carolina law as a consequence of the previously filed and now concluded North Carolina Action. In particular, Bowe contends Blue Ribbon's claims are barred under assertedly interconnected theories of res judicata and failure to bring a compulsory counterclaim. Although the Motion is not perfectly clear on this point, as the Court understands it, Bowe does not assert that these theories provide independent grounds for precluding Blue Ribbon's claims, but rather that a bar based on an earlier failure to bring a compulsory counterclaim is a form of res judicata preclusion.

As an initial matter, it is helpful to distinguish between res judicata and the so-called "compulsory counterclaim bar" under North Carolina law. The ancient common law doctrine of "[r]es judicata precludes parties from re-litigating issues that were or could have been

---

[15] See McFadden v. Bechtel Power Corp., No. 85-6945, 1986 WL 4195, at *2 (E.D. Pa. April 3, 1986) (citing County of Lancaster v. Philadelphia Elec. Co., 386 F. Supp. 934, 937 (E.D. Pa. 1975)). This in addition to "the allegations contained in the complaint, exhibits attached thereto, and [other] matters of public record." Beverly Enters., Inc. v. Trump, 182 F.3d 183, 190 (3d Cir. 1999) (citing Pension Benefit Gaur. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

[16] Swineford v. Snyder County Pa., 15 F.3d 1258, 1266 (3d Cir. 1994) (citing 28 U.S.C. § 1738 (1988)). Section 1738 implements the Full Faith and Credit Clause of Article Four of the United States Constitution. It provides, in relevant part, "[t]he . . . judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738.

raised in an action that resulted in a final judgment on the merits."[17]  The Supreme Court of North Carolina recognizes and applies the doctrine of res judicata,[18] which North Carolina courts describe as follows:

> [u]nder the doctrine of res judicata: where a second action . . . is between the same parties as the first action . . . , the judgment in the former action . . . is conclusive in the latter not only as to all matters actually litigated and determined, but also as to all matters which could properly have been litigated and determined in the former action."[19]

The Supreme Court of North Carolina has held that claim preclusion may be predicated upon a default judgment.[20]

Distinct from the doctrine of res judicata under North Carolina law – albeit often similar to it in effect – is the "compulsory counterclaim bar," a rule that precludes a claim that could have been brought as a compulsory counterclaim in an earlier action involving the parties in the current case.[21]  "It is well settled," in North Carolina, "that absent a specific statutory or judicially determined exception, a party's failure to interpose a compulsory counterclaim in an

---

[17] Milbourne v. Masters, No. 02-2122, 2006 WL 213522, at *2 (E.D. Pa. Jan. 25, 2006).

[18] See, e.g., Steljes v. Simmons, 86 S.E. 801, 802-03 (N.C. 1915).

[19] Fickley v. Greystone Enters., Inc., 536 S.E. 2d 331, 333 (N.C. App. 2000).  The elements of res judicata under North Carolina law are: "(1) a final judgment on the merits in an earlier lawsuit; (2) an identity of the cause of action in the prior suit and later suit; and (3) an identity of parties or their privies in both suits."  Green v. Dixon, 528 S.E. 2d 51, 53 (N.C. App. 2000) (citing Hogan v. Cone Mills Corp., 337 S.E. 2d 477, 482 (N.C. 1985)).

[20] Steljes, 86 S.E. at 802-03.

[21] Jonesboro United Methodist Church v. Mullins-Sherman Architects, L.L.P., 614 S.E. 2d 268, 270-73 (N.C. 2005).  In Jonesboro, the North Carolina Supreme Court differentiated the barring of a claim as res judicata from the so-called "compulsory counterclaim bar" by noting, for example, "a claim cannot be barred by res judicata . . . unless it was litigated to final judgment in a prior action . . . . [b]ut . . . the fact that there was no final judgment on the merits should be immaterial for purposes of the compulsory counterclaim bar."  Id. at 273 (quotations and citations omitted).

9

action that has been fully litigated bars assertion of that claim in any subsequent action."[22]

Rule 13(a) of the North Carolina provides the operative definition of compulsory counterclaim, as follows:

> [a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.[23]

The Rule's purpose is "to enable one court to resolve 'all related claims in one action, thereby avoiding a wasteful multiplicity of litigation.'"[24]

The parties herein dispute whether Bowe's claims in the North Carolina Action and Blue Ribbon's claims in this action "arise out of" the same "transaction or occurrence" within the meaning of N.C. R. Civ. P. 13(a), with Blue Ribbon arguing that they do not, and Bowe arguing that they do, and thus are barred. In accordance with the applicable test, the Court must assess: "(1) whether the issues of fact and law raised by the [claims] are largely the same; (2) whether substantially the same evidence bears on both claims; and (3) whether any logical relationship exists between the two claims."[25]

We begin with a comparison of the claims at issue in the two actions, as reviewed previously. Based on the Complaint in the North Carolina Action and the Findings of Fact and Conclusions of Law of the North Carolina Superior Court regarding default judgment and

---

[22] Id. at 271 (citations omitted).

[23] N.C.G.S. § 1A-1, N.C. R. Civ. P. 13(a) (2004).

[24] Gardner v. Gardner, 240 S.E. 2d 399, 403 (N.C. 1976) (quoting 6 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1409, at 37 (1971)).

[25] Jonesboro, 614 S.E. 2d at 272.

damages, it appears that the North Carolina Action was a simple suit to collect a discrete debt owed under an open account contract, where Bowe had performed its obligations by delivering certain ordered equipment to Blue Ribbon, but Blue Ribbon had failed to perform its return obligation of payment.  Nothing before the Court relating to the North Carolina Action mentions any dispute over, or even refers to, the longstanding, exclusive dealer/distributor agreements between Blue Ribbon and Bowe, alleged defects in Bowe machines, pricing or availability of Bowe vapor barriers, or misrepresentations by Bowe.  Meanwhile, these latter points comprise the subject matter of Blue Ribbon's claims against Bowe in this case.

    Turning to the requisite compulsory counterclaim considerations, the Court first finds that the issues of fact and law raised in the two actions are distinct, and that as a natural consequence, substantially different evidence bears on the respective claims.  Whether Blue Ribbon breached its Open Account Agreement with Bowe by failing to pay for certain equipment it ordered and accepted is a discrete and limited question of fact and law, answerable through review of the terms of the Open Account Agreement and perhaps order forms, invoices and any proof of payment.  The factual and legal questions thus raised by Bowe claims have little to no apparent connection to those raised by Blue Ribbon's claims of, <u>inter alia</u>, contractual breach, fraud, and breach of warranty, which, to take just a few examples, involve questions as to the terms and scope of the exclusive dealer/distributor agreements for equipment and parts between Bowe and Blue Ribbon; whether Bowe breached those agreements by selling equipment and parts directly to customers, dealers and distributors; whether Bowe breached warranties related to the quality of the Generation 6 line of dry cleaning equipment; and whether Bowe misrepresented the provenance of certain machines to Blue Ribbon.  Nothing before the Court suggests that the

Open Account Agreement implicated in the North Carolina Action and the exclusive dealer/distributor agreements at issue in this action are the same contract or agreement. Considering these differing causes of action and related factual allegations in the requisite light, it simply cannot be said that they are the same or substantially similar, as would support a finding that Blue Ribbon was required to bring them as compulsory counterclaims in the North Carolina Action.

Last, the Court considers whether there is a "logical relationship" between the claims in the two actions. While it is true that all claims at issue arose in the context of the longstanding business relationship between the parties, this alone does not supply the requisite degree of relationship between the claims. North Carolina's appellate courts have repeatedly held that the logical relationship standard requires something more than a mere shared basis, or "common origin," in a particular relationship.[26] Thus, in the case of Murillo v. Daly, the North Carolina Court of Appeals held that tenants' claims of breach of contract, negligence, and unfair and deceptive trade practices related to a broken septic tank system were not logically related to their landlord's recently adjudicated claim of breach of contract for failure to pay rent, despite the fact that the parties, apartment and lease agreement involved in the two actions were the same.[27] In finding that this "common origin" was not enough to support a finding of logical relationship between the claims, the court noted the fact that the first proceedings were not addressed or challenged in the later action, and that the two actions involved different causes of action and

---

[26] See, e.g., Murillo v. Daly, 609 S.E. 2d 478, 481 (N.C. App. 2005); Twin City Apartments v. Landrum, 263 S.E. 2d 323, 325 (N.C. App. 1980).

[27] Murillo, 609 S.E. 2d at 481.

requested remedies.[28]  For similar reasons, the Court does not find that there is a logical relationship between the claims in the instant action and those raised in the North Carolina Action.[29]

### III.  CONCLUSION

As none of the considerations in the relevant compulsory counterclaim analysis suggest that Blue Ribbon was required to bring its present claims as counterclaims in the North Carolina Action pursuant to N.C. R. Civ. P. 13(a), the Court finds that North Carolina's compulsory counterclaim bar does not apply to Blue Ribbon's claims.  Accordingly, said claims are not precluded and the instant Motion to Dismiss will be denied.

An appropriate order follows.

---

[28] Id.

[29] In the event Bowe does mean to argue that res judicata provides an independent basis for the preclusion of Blue Ribbon's claims, the Court likewise rejects the argument.  Under North Carolina law, the elements of res judicata are: "(1) a final judgment on the merits in an earlier lawsuit; (2) an identity in the causes of action in the prior suit and the later suit; and (3) an identity of parties or their privies in both suits."  Green, 528 S.E. 2d at 53. Focusing on the second element, North Carolina courts have noted there is no definitive test of whether causes of action are identical, see Jonesboro, 614 S.E. 2d at 270, and instead have looked to the constituent factual and legal elements of the relevant claims, as well as their evidentiary requirements, among other factors.  See, id.  Plainly, the analysis is, in essence, similar to that undertaken to evaluate whether a claim is a compulsory counterclaim under N.C. R. Civ. P. 13(a), and thus the Court relies on its analysis of the applicability of that Rule to Blue Ribbon's claims, as detailed above, in finding that the causes of action in question are not identical.